**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| JAMES ANTHONY PRIMUS, # 252315 )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DR. ROBERT LEE; )<br>)<br>Defendant. )<br>_____) | C.A. No.: 4:07-911-PMD-TER<br><br>**ORDER** |

This matter is before the court upon the recommendation of United States Magistrate Judge Thomas E. Rogers, III, that Defendant's Motion for Summary Judgment be granted and Plaintiff's Motion for Summary Judgment be denied. Magistrate Judge Rogers also recommended that any outstanding motions be deemed moot. The record contains the report and recommendation (the "R&R") of Magistrate Judge Rogers, which was made in accordance with 28 U.S.C. §636(b)(1)(B). Plaintiff filed timely objections to the R&R.

**BACKGROUND**

On April 9, 2007, *pro se* litigant James Anthony Primus ("Plaintiff") filed this cause of action against several persons employed by the South Carolina Department of Corrections ("SCDC") on theories of "medical negligence" and "medical malpractice." Plaintiff seeks damages for surgery performed by SCDC physicians in October of 2006 and which resulted in the unwanted removal of Plaintiff's testicle. On April 20, 2007, Magistrate Judge Rogers issued an R&R in which he found that Plaintiff's state law malpractice claim lacked diversity jurisdiction, and was most cognizable under 42 U.S.C. § 1983. (First R&R [7] at 3, n.3.) Furthermore, because Plaintiff is incarcerated at Lee Correctional Institution seeking compensation for inadequate medical care, the Magistrate Judge analyzed Plaintiff's cause of action in view of the "deliberate indifference"

threshold required by *Estelle v. Gamble*, 429 U.S. 97 (1976),[1] and confirmed in later cases. (*Id*. at 3.) Because Plaintiff's claim did not clearly allege the "sufficiently culpable state of mind" necessary to allege deliberate indifference, the R&R decided that under the strict constraints of *Estelle,* Plaintiff failed to state a § 1983 claim upon which relief could be granted. (*Id*. at 4.) Accordingly, the Magistrate Judge recommended that the Complaint be dismissed without prejudice and without issuance and service of process pursuant to 28 U.S.C. § 1915A.

Plaintiff filed Objections to this R&R, but the court concluded the Magistrate Judge properly determined "the facts as alleged in the original Complaint were clearly insufficient to support a claim of deliberate indifference." (Order dated June 22, 2007, at 4.) In his Objections, however, Plaintiff also sought "leave to clarify his initial complaint." (First Objections [8] at 1.) Plaintiff sought to clarify that Dr. Lee, the surgeon, removed Plaintiff's testicle against Plaintiff's wishes, and in retaliation for Plaintiff's lack of cooperation. Specifically, Plaintiff alleged that "[d]uring an exchange of words, Dr. Robert E. Lee stated that: 'if you keep messing with me I will take it out (testicle).'" (*Id*. at 2.) Plaintiff described this retaliatory surgery as "a wanton malicious act" and alleges that such actions show "deliberate indifference" by Dr. Lee.[2] Based on the Objections, the court granted Plaintiff's Motion to Amend his Complaint to include the new allegations against Dr. Lee and remanded the matter to the Magistrate Judge for issuance and service of process.

The court filed the allegations contained in Plaintiff's first objections as Plaintiff's Amended

---

[1] *Estelle* requires a prisoner seeking compensation in a § 1983 case to "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." 429 U.S. at 106.

[2] Plaintiff did not object to the dismissal of Defendants Dr. Babb and John Ozmint, so the only remaining Defendant is Dr. Robert Lee.

2

Complaint on June 25, 2007. Plaintiff filed a Motion for Summary Judgment on December 26, 2007, and Defendant Lee filed a Motion for Summary Judgment on January 27, 2008.[3] Magistrate Judge Rogers issued his second Report and Recommendation in this matter on July 8, 2008, and in this R&R, he recommended granting Defendant Lee's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment. (*See* Second R&R at 13-14.) The R&R thoroughly discussed the affidavit of Dr. Lee. Dr. Lee attested that he has practiced in the urology field for thirty years and that someone from his practice travels to Kirkland Correctional Institution on a weekly basis for the purpose of examining patients. (Lee Aff. ¶¶ 1-2.) Dr. Lee's affidavit further states,

> 3. On July 20, 2006, the plaintiff presented at the Urology Clinic at Kirkland Correctional Institution complaining of pain and a mass in his right scrotal area. Upon examination, I found a epididymal fullness and suspected that the plaintiff may have a cyst to his epididymis and I ordered a scrotal ultrasound. The epididymis is a long, tightly coiled tube that lies above and behind each testicle. Its function is to collect and store maturing sperm made by the testicles prior to ejaculation. In this case, plaintiff's Complaint indicated pain to the epididymis adjacent to his right testicle.
>
> 4. After the plaintiff's ultrasound, he returned to the clinic on my next monthly visit on August 24, 2006. The plaintiff continued to complain of tenderness and the ultrasound showed a right epididymal mass. The plaintiff [sic] ultrasound showed a 1.5 cm spermatocele or epididymal cyst . . . . Also, much calcification was present. As noted above, this was on the epididymis over the right globus major testicle. Based on these findings, it was clear that the proper course would be to excise the mass if it was solid, and I favored an epididymectomy if the mass was cystic, excising the spermatocele.
>
> 5. After a referral was issued on the South Carolina Department of Corrections for

---

[3]The other pending motion is a "motion requesting order for physical examination" filed by Plaintiff on or about March 17, 2008. (Doc. No. [46].) The Magistrate Judge recommended denying this motion as moot. However, in light of this court's determination that both motions for summary judgment should be denied, this motion is remanded back to the Magistrate Judge for further consideration.

surgical services on September 10, 2006, the plaintiff's epididymectomy was scheduled for October 2, 2006. After the plaintiff was properly anaesthetized and prepped, an incision was made laterally in the scrotum and the testicle was presented. The epididymis had a rather nodular swelling through the extent of the epididymis with a dark nodular noted at the globus major. I elected at this point to do a formal epididymectomy. An incision was made in the connective tissue medial to the epididymis between the epididymis and the testicle and dissection was begun inferiorly and proceeded superiorly. The vas deferens were identified and ligated and divided. Care was taken to avoid the testicular artery. Bleeders were electrocauterized, and after complete removal of the epididymis and good hemostasis was achieved, the testicle was placed back in the scrotum sac and the scrotum was closed . . . . Thereafter, the wound was dressed and the patient was sent to recovery in satisfactory condition, having tolerated the procedure well.

6. The plaintiff was verbally informed by me prior to the operation that one of the known complications of such surgery is testicular atrophy, as there is a very small artery going through the epididymis to the testicle. Due to the small size of the artery, there is always an inherent risk that it can be damaged or go into spasm during an epididymectomy. In such a case, the result can be a decreased flow of blood into the testicle, which can result in testicular atrophy. Notwithstanding this advice, the plaintiff stated that he wished to proceed with the epididymectomy.

7. At no time was there ever any intent or plan to remove the plaintiff's testicle. Nor was there ever an argument or unpleasant exchange between the plaintiff and me regarding the surgery in any manner. In addition, I certainly did not threaten to take out the plaintiff's testicle after a verbal exchange and most certainly did not remove the testicle in order to retaliate against the plaintiff as a result of any argument, as he alleges in his Complaint.

8. On March 15, 2007, the plaintiff returned to the clinic and complained that it appeared that his right testicle was absent. The plaintiff had no complaints of pain and upon examination, it was found that his right testicle had atrophied, which is a possible side effect in this sort of surgery. At that time, I ordered a scrotal ultrasound.

9. On April 19, 2007, the plaintiff again returned to the clinic complaining that he had not had an erection since the surgery. A serum testosterone test was ordered. On July 12, 2007, the plaintiff returned to the clinic and a review of the serum testosterone test showed that the plaintiff's testosterone was within the normal limits. Therefore, it was clear that if the plaintiff suffered from any impotence, it would not have resulted from the postoperative atrophy of the right testicle[.]

(*Id*. ¶¶ 3-9.)

Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment as well as his own affidavit. (*See* Doc. No. [44].) He stated in his affidavit that "[t]here was concern as to whether or not the cyst was cancerous" and that an "intense conversation" took place between himself and Dr. Lee. (Pl.'s Aff. at 1.) (*Id.* at 1-2.) Plaintiff further attests,

> My main concern was that cancer may have been present. I continued to question the Dr. about the surgery. I told Dr. Lee that "under no circumstances are you to remove my testicle." Dr. Lee said that "If you keep messing with me I will take it out." Dr. Lee then left the room and I was placed under anesthesia.

(*Id.* at 2.) According to Plaintiff, two days after the surgery, Dr. Babb found that Plaintiff's right testicle "was not present." (*Id.*) Plaintiff states that "[f]or seven months I tried to see Dr. Lee in order to find out what happened to me, and what he had done." (*Id.*) After a period of time, Plaintiff finally saw Dr. Lee. (*Id.* at 2-3.) Plaintiff's affidavit further states,

> I was very upset at what had happened. I feel and strongly believe Dr. Lee violated me and my rights, and has caused permanent damage to my body. Dr. Lee knew all along what had happened. He kept the information away from me purposely until his motion for summary judgment. . . .
> . . .
> It is ironic that Dr. Lee now tries to explain what happened to my testis. Earlier treatment and diagnosis could have saved me and everyone else all this trouble.

(*Id.* at 3.)

In his R&R dated July 8, 2008, Magistrate Judge Rogers concluded that Plaintiff failed to show that Dr. Lee was deliberately indifferent to his medical needs. (Second R&R at 7.) The R&R states,

> The plaintiff has failed to show that he was denied medical treatment. As noted from the complaint and response, plaintiff asserts that he was seen several times by Dr. Lee who also performed surgery to determine if a mass was cancerous. Based on the medical records, an ultrasound and testosterone tests were later performed to determine what happened to his testicle and to determine if he had become impotent based on plaintiff's asserting that he had not had an erection.

5

> Plaintiff has not been denied medical treatment but is basically asserting a medical malpractice or medical negligence claim on the part of defendant Lee. As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Additionally, plaintiff has failed to show that he had a serious medical need of which defendant knew about and consciously ignored. Plaintiff has not shown that any conduct by this defendant "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v. Sheffer, supra. Under *Estelle*, the failure of the defendant to provide as much information about the surgical procedure that he underwent as plaintiff might have desired and any negligence or possible malpractice that might have occurred while the physician was attempting to treat plaintiff's medical problem do not rise to the level of compensable constitutional violations. *See Estelle*, 429 U.S. at 105.
>
>   Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff by this defendant. For the above stated reasons, summary judgment should be granted in favor of defendant Lee on this issue.

(*Id.* at 9-11.) Magistrate Judge Rogers further recommended Defendant's Motion for Summary Judgment be granted because Defendant is entitled to qualified immunity. (*Id.* at 11-12.) He then recommends dismissing any potential state law claims and denying Plaintiff's Motion for Summary Judgment. (*Id.* at 13.) Plaintiff filed objections to this R&R on or about July 14, 2008.[4]

---

[4]In Plaintiff's second Objection, he states, "A Federal Court must liberally construe [p]leadings filed by [p]ro [s]e litigants to allow them to fully develop potentially meritorious cases." (Second Objections at 3.) Plaintiff asserts he filed numerous exhibits and affidavits with the court while Defendant "fail[s] to show any tangible evidence to disprove Plaintiff['s] case." (*Id.*) Both parties have submitted evidence in this case. This objection is thus without merit.

**STANDARD OF REVIEW**

**A.     Magistrate Judge's R&R**

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R.  28 U.S.C. § 636(b)(1).  After a review of the entire record, the R&R, and Plaintiff's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts.  However, because the court concludes Defendant's Motion for Summary Judgment should be denied, the court adopts the R&R only to the extent it is consistent with this order.

**B.     Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  All evidence should be viewed in the light most favorable to the nonmoving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate."  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "obligation of the nonmoving party 'is

particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327.

## **ANALYSIS**

In Plaintiff's first Objection, he states that his "constitutional rights were violated due to a deliberate indifference to his medical needs." (Second Objections at 2.) He states that he was not able to see Dr. Lee post-surgery until six months after the surgery and that although he was diagnosed with testicular atrophy, which will cause the testicle to shrink, an ultrasound revealed the right testicle could not be found at all. (*Id.*) While Dr. Lee attests that Plaintiff suffers from testicular atrophy, Plaintiff asserts he no longer has a right testicle at all. Plaintiff has presented some evidence that he no longer has a right testicle–the findings from a scrotal sonogram with Doppler states, "The right testis cannot be identified." (Pl.'s Mot. for Summ. J. Ex.; Doc. No. [34-2].) The "impression" section of this document, which appears to have been dictated by W. John Baynard, M.D., states, "Non-visualization of the right testis which may be atrophic." (*Id.*) Thus, while Defendant has presented evidence that Plaintiff's right testis has merely atrophied, Plaintiff has produced some evidence that the right testis is no longer there.

Even assuming Plaintiff's right testicle has been removed, however, such fact would not necessarily demonstrate deliberate indifference. As the Supreme Court stated in *Estelle v. Gamble*, 429 U.S. 97 (1976),

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must

8

> allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 106; *see also Wade v. Rose*, 838 F.2d 469, at *1 (4th Cir. 1988) (unpublished table decision) (concluding the plaintiff failed to state a claim for inadequate medical treatment pursuant to § 1983 when "[a]t most, the record shows that [the plaintiff] and the defendants disagreed over the proper course of treatment . . ."); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review.").

Plaintiff's third Objection, however, highlights Plaintiff's assertion that he alleges more than simple negligence or medical malpractice. In his third Objection, Plaintiff states, "As previously discussed that defendant was deliberately indifferent to Plaintiff['s] medical need by deliberately removing Plaintiff['s] right testicle." (Second Objections at 3.) An individual acts in a deliberately indifferent manner if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To act with deliberate indifference, Defendant "must 'want[] harm to come to the prisoner,' or, at least, must possess 'total unconcern for a prisoner's welfare' in the face of 'serious risks.'" *Duane v. Lane*, 959 F.2d 673, 676 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991)). If the defendant intended harm, then he acted with the mental state sufficient to support a finding of deliberate indifference. *See Jensen v. Conrad*, 570 F. Supp. 114, 122 (D.S.C. 1983) ("Government officials may be held to have acted with deliberate indifference toward an individual under their care if it is established that they *intentionally caused him harm*, knowingly allowed others to harm him, or acted with conscious

indifference to his safety." (emphasis added)); *cf. Crist v. Laudenslager*, 36 F.3d 1092, at *4 (4th Cir. 1994) (unpublished table decision) ("We agree that actual intent is not necessary for a showing of deliberate indifference, i.e., [the defendant] need not have been purposefully out to harm [the plaintiff] . . ."); *Coppage v. Mann*, 906 F. Supp. 1025, 1036 (E.D. Va. 1995) ("Deliberate indifference[] may be viewed as a state of mind that lies on a continuum of mind states somewhere between simple negligence and intent to harm."). Although Dr. Lee denies the following, Plaintiff presented evidence that before the operation, a dialogue occurred between Plaintiff and Defendant in which Defendant asked Plaintiff how he was doing, and Plaintiff responded by asking how Defendant was doing because Plaintiff wanted to ensure Dr. Lee could perform the surgery without "messing [him] up." (Pl.'s Mot. for Summ. J. at 2.)[5] Plaintiff asserts that he asked Dr. Lee how he was doing three times when Dr. Lee finally stated, "I will remove the testicle if you don't shut up." (*Id*.)

As the court stated in its Order dated June 22, 2007,

> If Dr. Lee did in fact unnecessarily remove Plaintiff's testicle in retaliation for Plaintiff's lack of cooperation, such conduct would constitute the sort of cruel and unusual punishment prohibited by the Eighth Amendment. *See Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979) (holding that where plaintiff asserts that he warned the prison physician of his possible allergic reaction to the medicine being prescribed, and that the physician nonetheless prescribed the very same medication which had caused the allergic reaction, causing a serious and painful aggravation of his condition, plaintiff had stated a claim of deliberate indifference under § 1983) (abrogated in part on other grounds); *see also Howard v. Smyth*, 365 F.2d 428 (4th Cir.) (prisoners cannot be subjected to arbitrary punishment by prison officials), *cert. denied,* 385 U.S. 988 (1966).

(Order at 7.) In his affidavit, Dr. Lee indicates that the proper course of action was to excise the mass if it was solid and to perform an epididymectomy if the mass was cystic. (Lee Aff. ¶ 4.) He also states in his affidavit that after he removed the epididymis, he placed the testicle back in the

---

[5]Plaintiff attests to the facts contained in his Motion for Summary Judgment.

10

scrotum sac and closed the scrotum with sutures. (*Id.* ¶ 5.) Dr. Lee thus never indicated that proper treatment for Plaintiff's condition could include removal of the right testicle, and he further indicated that he did not in fact remove the right testicle. There is thus an issue of fact concerning whether or not Dr. Lee removed Plaintiff's testicle. In addition, there is evidence, albeit disputed, that Plaintiff and Defendant had a disagreement before Defendant performed the surgery and that Defendant told Plaintiff, "I will remove the testicle if you don't shut up."

The court acknowledges there is plenty of evidence in the record that Plaintiff received adequate medical care. Dr. Lee's affidavit indicates that he studied Plaintiff's ultrasound and determined the proper course of treatment would be an epididymectomy if the mass was cystic. After Defendant made the incision, he noted the epididymis had a nodular swelling thorough the extent of the epididymis with a dark nodular noted at the globus major and then made the decision to do a formal epididymectomy. He attests that in performing the procedure, he used care to avoid the testicular artery and that he placed the testicle back in the scrotum sac. Furthermore, Dr. Lee attests that he informed Plaintiff of the risk of testicular atrophy in performing this type of surgery and that Plaintiff wished to proceed. Upon hearing Plaintiff's complaints that his right testicle was absent, Dr. Lee ordered a scrotal ultrasound, and upon Plaintiff's complaint that he had not had an erection since the surgery, Dr. Lee ordered a serum testosterone test, which revealed Plaintiff's testosterone was within the normal limits. If all this evidence is believed, Plaintiff has no claim under § 1983.

However, there is also evidence in the record that Defendant was deliberately indifferent to Plaintiff's serious medical needs. There is no dispute that Plaintiff had a medical problem with his epididymis, but Plaintiff presents evidence of a disagreement between himself and Dr. Lee and

11

evidence that Dr. Lee threatened to remove Plaintiff's testicle. Plaintiff also presents evidence that he no longer has a right testicle. Given this evidence, and the fact that Dr. Lee never indicated that complete removal of a testicle might be necessary, the court concludes summary judgment is not appropriate. *See Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (noting that in order to show deliberate indifference, a plaintiff must show "that the officials 'refused to treat him, ignored his complaints, *intentionally treated him incorrectly*, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs'" (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (emphasis added)); *see also Williams v. Vincent*, 508 F.2d 541 (2d Cir. 1974) (reversing dismissal of prisoner's complaint where he alleged prison medical officials merely stitched the stump of his ear as opposed to attempting to reattach it; the court stated, "[O]n the basis of the allegations in the complaint, and assuming that evidence might show that sewing the severed portion of the ear back on was practicable, the possibility that deliberate indifference caused an easier and less efficacious treatment to be consciously chosen by the doctors cannot be completely foreclosed.") In sum, there is material conflict in the evidence, and a credibility determination is for the finder of fact, not this court, to decide. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *see also Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .").

In Plaintiff's fourth Objection, he states Defendant is not entitled to qualified immunity because that defense "does not shield a defendant when in his individual capacity he intentionally

causes harm to an individual in his care." (Objections at 4.) As the Magistrate Judge noted in his R&R, the Supreme Court established the standard for courts to apply in determining whether a defendant is protected by qualified immunity: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Fourth Circuit explained,

> In determining whether the specific right allegedly violated was clearly established, the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (internal quotation marks and citations omitted). The Magistrate Judge determined Defendant was entitled to summary judgment on the issue of qualified immunity because Plaintiff "fails to show that the [D]efendant violated any of [Plaintiff's] clearly established constitutional or statutory rights." (Second R&R at 12.) As noted above, the court concludes that there is a genuine issue of material fact concerning whether Defendant was deliberately indifferent to Plaintiff's serious medical needs. Furthermore, the court concludes that while the parties' versions of the events are dramatically different, a reasonable person would have known that removing a prisoner's testicle in retaliation for lack of cooperation would violate that individual's constitutional rights.[6]

---

[6] Plaintiff's final Objection states that his state law claims should not be dismissed. (Second Objections at 4.) Because the court does not grant summary judgment to Defendant on Plaintiff's § 1983 claim, the court will not dismiss Plaintiff's state law claims.

13

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Plaintiff's Motion for Summary Judgment is **DENIED**. It is further **ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.[7]

    **AND IT IS SO ORDERED**.

*Patrick Michael Duffy*
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**September 8, 2008**

---

[7] The court expresses no opinion on Plaintiff's "motion requesting order for physical examination." This motion is remanded to the Magistrate Judge for further consideration.