# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James Anthony Primus, #252315 ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 4:07-911-PMD |
| v. ) | |
| Dr. Robert Lee, ) | **ORDER** |
| Defendant. ) | |

This matter is before the court upon Plaintiff James Anthony Primus's ("Plaintiff") objections to a United States Magistrate Judge's Report and Recommendation ("R&R"), which recommends that this court grant Defendant Dr. Robert Lee's ("Defendant") motion for summary judgment and deny Plaintiff's motion for summary judgment. Having reviewed the entire record, including Plaintiff's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this order.

## BACKGROUND

Plaintiff, an inmate with the South Carolina Department of Corrections, filed this instant action pursuant to 42 U.S.C. § 1983, alleging that Defendant infringed upon his constitutional rights by exhibiting a deliberate indifference to a serious medical need and subjecting him to cruel and unusual punishment. Specifically, Plaintiff alleges that, after Defendant discovered a benign cyst on Plaintiff's right testicle, Defendant agreed to remove the cyst, but only the cyst and not the testicle. During this conversation, Plaintiff alleges that the two of them became involved in "an unpleasant exchange," during which Defendant allegedly threatened to remove Plaintiff's testicle if he continued to "mess" with Defendant. Sometime after Defendant completed the surgery, Plaintiff learned that

his right testicle no longer existed, and Plaintiff now asserts that Defendant intentionally and maliciously removed it during the surgery. Defendant has filed a motion for summary judgment, in which he claims that there is no genuine issue over any material fact in this case and that Plaintiff's claim fails as a matter of law. The Magistrate Judge agreed with Defendant and found that Plaintiff has failed to show that Defendant was deliberately indifferent to his medical needs. Plaintiff's objections are before the court.

## STANDARDS OF REVIEW

### I. The Magistrate Judge's Report and Recommendation

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R. *Id.*

### II. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary

judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)).

Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327. The court remains mindful that Plaintiff appears before the court *pro se*, and therefore, his pleadings are accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

**ANALYSIS OF PETITIONER'S OBJECTIONS**

It is well established that deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation omitted). To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Therefore, a plaintiff alleging an

3

Eighth Amendment violation against a medical professional must show: "(1) the denial of a medical need that objectively is so serious as to implicate the ban against cruel and unusual punishment; (2) that the doctor acted with a sufficiently culpable state of mind—that is, he deliberately did not act in the face of a subjectively known risk; and (3) the doctor's conduct caused the injury or consequence of which the plaintiff complains." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 707–08 (E.D. Va. 2004) (citing Fourth Circuit cases). In order for a defendant to be liable for deliberate indifference, the plaintiff must prove that the official was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also that the official had drawn the inference. *See Young v. City of Mount Rainer*, 238 F.3d 567, 575–76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored a detainee's serious need for medical care."). The mere fact that a prisoner may believe he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Moreover,

> an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105–06.

To show that he did not act with deliberate indifference with respect to Plaintiff's medical needs, Defendant provided the court with Plaintiff's medical reports and an affidavit, in which Defendant denies ever getting into a verbal dispute with Plaintiff and denies ever threatening to

4

remove Plaintiff's testicle. (Lee Aff. ¶ 7.) A review of Defendant's affidavit and Plaintiff's records shows that, in July of 2006, Plaintiff complained of pain in his right scrotal area. Based on these complaints, Defendant suspected that Plaintiff had a cyst on his epididymis, which is a tightly coiled tube that collects and stores maturing sperm and is located behind the testicle. Defendant ordered an ultrasound be performed, which confirmed Defendant's suspicions, as it uncovered a mass on Plaintiff's right epididymis. Defendant concluded that surgery was necessary to ensure that cancer did not exist, and prior to the surgery, Defendant attests that he advised Plaintiff of the natural risks inherent in an epididymectomy. One such risk he advised Plaintiff of was the possible damage to a small artery leading through the epididymis to the testicle. If the artery happened to be damaged during the epididymectomy or went into a spasm, the result could be a decreased flow of blood to the testicle, which can lead to testicular atrophy. According to Defendant, Plaintiff elected to proceed with the epididymectomy to ensure the mass was not cancerous, despite the risk of testicular atrophy. Defendant performed a formal epididymectomy in October of 2006. Defendant attests that care was taken to avoid the testicular artery during surgery, and after complete removal of the epididymis and good homeostasis was achieved, the Plaintiff's testicle was placed back in the scrotum sac and the scrotum was closed. It was later determined that the mass was not cancerous.

On March 15, 2007, Plaintiff returned to the clinic and complained that his right testicle was absent. Defendant states that Plaintiff did not complain of pain, but upon examination, he discovered that Plaintiff's right testicle had atrophied, which was confirmed by an ultrasound. Then, in April of the same year, Plaintiff returned to the clinic complaining that he had not had an erection since the surgery. A serum testosterone test was ordered, which showed Plaintiff's testosterone to be within the normal limits. Based on this result, Defendant believes it is clear that if Plaintiff suffered from

any impotence, it would not have resulted from the postoperative atrophy of the right testicle. Thereafter, Plaintiff requested, and Defendant consented to, a second, independent medical examination by Dr. Ross A. Rames, MD, FACS, Associate Professor of Urology at the Medical University of South Carolina. A physical examination of Plaintiff took place on January 8, 2009, after which Dr. Rames concluded that Plaintiff's right testicle was not palpable, although there did appear to be some residual cord structure palpable within the scrotum. On February 10, 2009, after examining all of Plaintiff's medical records, Dr. Rames concluded that Plaintiff lost his right testicle due to "ischemic atrophy," which was likely due to abnormality or absence of the testicular artery. Dr. Rames further stated that ischemic atrophy is a recognized complication of operations on the testicle, epididymis, or cord structures.

Based on this record, the Magistrate Judge concluded that Plaintiff offered no evidence that Defendant intentionally removed his right testicle. In his objections, Plaintiff objects to the use of Dr. Rames's examination because Plaintiff believes his review was "not complete nor entirely independent, as it was stipulated in the court order, [because] upon arriving at the Medical University, a doctor other than Dr. Rames examine[d] Plaintiff and [concluded] that Plaintiff's right testicle had been remove[d]." (Objections at 6.) Plaintiff claims that two correctional officers witnessed this examination by the doctor, although the officers' names are not provided. (*Id.*) Then, according to Plaintiff, Dr. Rames met with him, but could not determine why Plaintiff's right testicle was missing, nor, according to Plaintiff, would he disclose who the doctor was that examined Plaintiff and concluded that his testicle had been removed. (*Id.* at 7.) Based on these assertions, Plaintiff believes he has shown that Defendant admitted to removing Plaintiff's right testicle. (*Id.*) The court disagrees.

After reviewing the record, Plaintiff has not presented sufficient evidence to create a genuine

6

issue over whether or not Defendant was deliberately indifferent to his medical needs. It is evident that Defendant took care in treating the cyst located on Plaintiff's epididymis and in conducting the surgery necessary to remove the cyst to ensure cancer was not present. Furthermore, Defendant attested to the fact that he advised Plaintiff of the possible consequences of the epididymectomy, which included the atrophying of his testicle, and that Plaintiff still agreed to have the epididymectomy performed. Moreover, Plaintiff has not offered any evidence besides his own speculation to support his belief that Defendant intentionally removed his testicle, and contrary to Plaintiff's contention, a second and independent physician, Dr. Rames, conducted a physical examination of Plaintiff, reviewed his medical records, and concluded that Plaintiff lost his right testicle due to ischemic atrophy. The court is not without sympathy for Plaintiff's condition, but everything in the record reveals that testicular atrophy was an inherent risk involved with the epididymectomy, and unfortunately, it is a risk which Plaintiff has realized. At best, Plaintiff asserts a medical negligence claim, which the Supreme Court has stated is not a cognizable claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

**CONCLUSION**

Based on the foregoing, the court **GRANTS** Defendant Robert Lee's motion for summary judgment and **DENIES** Plaintiff James Anthony Primus's motion for summary judgment. Because the court grants Defendant's motion for summary judgment on all of Plaintiff's claims for which it has original jurisdiction, the court also **DISMISSES** any additional claims for relief under state law, to the extent Plaintiff's complaint can be interpreted to state such, for want of jurisdiction. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").

       **AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**March 30, 2010**
**Charleston, SC**